Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CONSEJO DE TITULARES DEL CONDOMINIO JARDINES DE CUENCA, ATTENURE HOLDINGS TRUST 8 y HRH PROPERTY HOLDIGNS LLC<br><br>Peticionarios<br><br>v.<br><br>ONE ALLIANCE INSURANCE COPAMANY<br><br>Recurrida | KLCE202400713 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2019CV09045 (603)<br><br>Sobre: Incumplimiento Aseguradoras (Huracanes Irma/María) |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard

Álvarez Esnard, jueza ponente.

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 31 de julio de 2024.

Comparece ante nos, el Consejo de Titulares del Condominio Jardines de Cuenca ("Consejo de Titurales"), Attenure Holdings Trust y HRH Property Holdings LLC (en conjunto, "los Peticionarios") mediante *Petición de Certiorari* presentada el 28 de junio de 2024. Nos solicita que revoquemos la *Resolución* que se emitió y notificó el 29 de mayo de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o foro *a quo*). Por virtud de esta, el foro primario declaró *No Ha Lugar* la *Solicitud de Sentencia* Sumaria presentada por los Peticionarios.

Por los fundamentos que expondremos a continuación, **denegamos** la expedición del auto de *certiorari*.

Número Identificador

SEN(RES)2024_____

**I.**

El 4 de septiembre de 2019, los Peticionarios incoaron una *Demanda* contra One Alliance Insurance Corporation ("One Alliance" o "Recurrida").[1] Mediante esta, alegaron que la *Demanda* en cuestión se presentó con el propósito de cobrar la indemnización del seguro por las pérdidas causadas por el Huracán María. En ese sentido, especificaron que la Recurrida emitió una póliza de seguro de propiedad comercial a favor del Condominio Jardines de Cuenca y por ello, debía compensar los daños que causó el Huracán María a la propiedad. Conforme se desprende de sus alegaciones, el Consejo de Titulares cooperó con One Alliance y presuntamente, se documentó de manera suficiente las perdidas. Cónsono por lo antes expuesto arguyó que se logró identificar al menos $12,332,707.61 en daños cubiertos.

Por otro lado, surge de la *Demanda* que, pese a esto, tras dos (2) años del impacto del Huracán María, One Alliance se había negado a pagar lo adeudado. Ante este escenario, los Peticionarios solicitaron los siguientes remedios:

A. Emita una Sentencia Declaratoria que la Póliza de Seguro cubre todos los daños que el Huracán María causó a la Propiedad Asegurada, y que One Alliance le debe a los Demandantes un pago por concepto de seguro de una cantidad a ser determinada en el juicio, pero que se estima en alrededor de $12,332,707.61, menos cualquier deducible aplicable y cantidades pagadas anteriormente por One Alliance;

B. Emita sentencia a favor de los Demandantes en una cantidad a ser determinada en el juicio, pero que se estima en alrededor de $12,332,707.61, menos cualquier deducible aplicable y cantidades pagadas anteriormente por One Alliance;

C. Condene a los Demandados a pagarle a los Demandantes cualquier otro daño como consecuencia de sus actuaciones y omisiones en una cantidad a ser probada durante el juicio;

D. Otorgue a los Demandantes honorarios de abogados y gastos incurridos en presentar este caso, al igual que

---

[1] Apéndice *certiorari,* págs. 1-17.

intereses pre sentencia, por el dolo de One Alliance y su temeridad en ajustar y pagar la pérdida de Jardines de Cuenca pronta y correctamente; y

E. Otorgue cualquier otro remedio que el Tribunal entienda justo y apropiado.[2]

En respuesta, el 14 de enero de 2020, One Alliance presentó su *Contestación a Demanda*.[3] En esencia, negó algunas alegaciones y levantó ciertas defensas afirmativas. En particular, alegó que la póliza de seguro en cuestión estaba sujeta a cláusulas, condiciones, exclusiones, deducciones y endosos. Además, reiteró la Recurrida que en todo momento actuó de buena fe y conforme a la ley.

Así las cosas, tras una serie de eventos procesales los cuales son inmeritorios reseñar, el 16 de enero de 2024, los Peticionarios presentaron una *Solicitud de Sentencia Sumaria*.[4] Mediante esta, relataron que, el 17 de abril de 2020, los Peticionarios habían presentado una moción a los fines de solicitar autorización para referir la controversia sobre los daños al proceso de *appraisal* ante un árbitro. Narraron que, tras la Recurrida expresar que no tenía reparos sobre la aludida petición, el 22 de mayo de 2020, el foro primario dictó *Sentencia* mediante la cual ordenó a que las partes se sometieran al proceso de *appraisal*. Conforme con lo anterior, explicó que dicho procedimiento comenzó el 12 de junio de 2020 y concluyó el 15 de marzo de 2022. Sin embargo, indicó que el resultado del *appraisal* fue impugnado por One Alliance pero el foro primario denegó dicha impugnación. De igual manera, los Peticionarios recalcaron que la Recurrida solicitó la revisión de dicha determinación mediante *Certiorari* tanto al Tribunal de

---

[2] *Íd.*, pág. 16.
[3] *Íd.*, págs. 18-32.
[4] *Íd.*, págs. 274-303.

Apelaciones, como al Tribunal Supremo de Puerto Rico. Cabe destacar que ambos recursos fueron denegados por los foros revisores.

De esta forma, explicaron que, en este caso, se había alcanzado un acuerdo de valoración de daños o *Appraisal Award* por la cantidad total de $4,865,729.40. Arguyeron que dicho acuerdo era vinculante para las partes del litigio conforme tanto con la Ley 242-2018,[5] como con la Carta Normativa Núm. CN-2019-248-D.[6] Esbozaron que, ante este cuadro, no existía controversia de hechos materiales que impidiera que el foro primario interpretara y aplicara el contrato entre las partes y ordenara el pago a favor del Consejo de Titulares por la suma ajustada de $4,507,279.40. En tal sentido, los Peticionarios solicitaron que el foro *a quo* interpretara el derecho aplicable para dirimir la controversia. Reiteraron que el *Appraisal Award* estableció el valor de los daños reclamados, por lo cual correspondía emitir el correspondiente pago conforme las disposiciones de la póliza.

Por su parte, el 7 de marzo de 2024, One Alliance, presentó su *Oposición a Solicitud de Sentencia Sumaria.*[7] Esgrimió que no procedía dictar sentencia por la vía sumaria pues existían controversias de hechos materiales sobre el verdadero valor de los daños sufridos en la propiedad asegurada. Argumentó que ello obedecía a una espoliación de la evidencia por parte de los Peticionarios en el caso. En específico, puntualizó la existencia de un informe pericial realizado en noviembre y diciembre de 2017

---

[5] Ley Núm. 242 de 27 de noviembre de 2018, la cual se aprobó con el propósito de enmendar algunas disposiciones del Código de Seguros de Puerto Rico.
[6] Dicha Carta fue emitida por la Oficina del Comisionado de Seguros para que sirvieran como unas guías para regular el procedimiento de *appraisal.*
[7] Apéndice *certiorari,* págs. 465-503.

que concluía una cantidad global de $529,012.56 y el mismo fue entregado a la Presidente de la Junta de Directores del Condominio. Manifestó que, presuntamente dicho informe pericial, se le ocultó a One Alliance y que ello consistía en espoliación de evidencia pues los Peticionarios a sabiendas de que dicho informe les perjudicaba, lo ocultaron.

Asimismo, la Recurrida indicó que la ocultación de evidencia era fundamento suficiente para decretar la nulidad de la póliza y por consiguiente, determinar la inexistencia de la obligación del asegurador con su asegurado. En vista de ello, solicitó que se declarara *No Ha Lugar* la solicitud de sentencia sumaria.

Posteriormente, el 9 de abril de 2024, los Peticionarios presentaron una *Réplica a Oposición a Solicitud de Sentencia Sumaria.*[8] En esencia, arguyeron que la oposición presentada por la Recurrida se fundamentaba en su inconformidad con la valoración de los daños del *Appraisal* y que la existencia de un informe preparado en el 2018 que valoraba ciertos daños en una cuantía menor a la del *Appraisal* implicaba fraude, lo cual supondría la anulación de la póliza. Ante esto último, argumentaron que One Alliance nunca levantó la defensa de fraude en su contestación a la demanda, por lo cual estaba imposibilitado de traer ese planteamiento. Por su lado, el 30 de abril de 2024, One Alliance presentó una *Dúplica a Réplica a Oposición a Solicitud de Sentencia Sumaria,*[9] a los fines de, entre otras cosas, llamar la atención de que los Peticionarios no refutaron la existencia del informe pericial del 2018.

---

[8] *Íd.*, págs. 551-577.
[9] *Íd.*, págs. 578-582.

Atendidos estos escritos, el 29 de mayo de 2024, el foro primario emitió y notificó su *Resolución.*[10] Mediante esta, se realizaron las siguientes determinaciones de hechos incontrovertidos:

1. La aseguradora One Alliance emitió una póliza de seguro número 75-28- 000001145-0 (en adelante, "Póliza") a favor del Condominio Jardines de Cuenca.

2. La Póliza dispone que la propiedad cubierta es el Condominio Jardines de Cuenca ubicado en 195 Ave. Arterial Hostos, San Juan, P.R., 00918.

3. La Póliza establece que la misma estaría vigente desde el 15 de junio de 2017 hasta el 15 de junio de 2018.

4. La Póliza dispone que One Alliance pagará por la pérdida física directa o por los daños a la propiedad cubierta en las instalaciones descritas en las Declaraciones causadas por o resultantes de cualquier Causa de pérdida cubierta.

5. La Póliza define el término Causa de perdida cubierta como pérdida física directa a menos que la pérdida esté excluida o limitada en la póliza.

6. El 20 de septiembre de 2017, el huracán María pasó por Puerto Rico.

7. A la fecha del paso del huracán María por Puerto Rico, la Póliza emitida por One Alliance a favor de Jardines de Cuenca estaba vigente.

8. El huracán María, así como los vientos y agua asociados con el huracán María, ocasionaron daños a la Propiedad Asegurada, entiéndase, a Jardines de Cuenca.

9. El 15 de marzo de 2022, la Sra. Lizzette Santiago, tasadora de Jardines de Cuenca y el Sr. Jorge Fernández, árbitro designado, llegaron a un acuerdo de valorización de los daños ocasionados por el huracán María a Jardines de Cuenca y suscribieron el Appraisal Award, que presentaron al Tribunal el 17 de junio de 2022.

10. El Appraisal Award establece la cantidad tasada total de $4,865,729.40, sobre el valor de las pérdidas reclamadas.

11. La Póliza asegura el Edificio 1 de Jardines de Cuenca el cual consiste en "four story concrete building occupied as residential apartments".

12. La Póliza incluye un límite de cubierta de $2,341,805.00 para el Edificio número uno (1).

13. En cuanto al referido Edificio número uno (1), la Póliza establece un deducible del 2% del límite de cubierta por tormenta ("windstorm"), lo que equivale a $46,836.00.

14. El Appraisal Award dispone que se evaluó y tasó los daños ocasionados por el huracán María al Edificio número uno (1) por la cantidad de $636,595.

---

[10] *Íd.,* págs. 583-599.

15. La Póliza asegura el Edificio número dos (2) de Jardines de Cuenca el cual consiste en "four story concrete building occupied as residential apartments".

16. La Póliza incluye un límite de cubierta de $2,142,046.00 para el Edificio número dos (2).

17. En cuanto al referido Edificio número dos (2), la Póliza establece un deducible del 2% del límite de cubierta por tormentas ("windstorm"), lo que equivale a $42,841.00.

18. El Appraisal Award dispone que el valor tasado de los daños ocasionados por el huracán María al Edificio número dos (2) fue de $596,739.37.

19. La Póliza asegura el Edificio número tres (3) de Jardines de Cuenca el cual consiste en "four story concrete building occupied as residential apartments".

20. La Póliza incluye un límite de cubierta de $2,350,905.00 para el Edificio número tres (3).

21. En cuanto al referido Edificio número tres (3), la Póliza establece un deducible del 2% del límite de cubierta por tormentas ("windstorm"), lo que equivale a $47,018.00.

22. El Appraisal Award dispone que el valor tasado de los daños ocasionados por el huracán María al Edificio número tres (3) fue de $650,476.33.

23. La Póliza asegura el Edificio número cuatro (4) de Jardines de Cuenca el cual consiste en "four story concrete building occupied as residential apartments".

24. La Póliza incluye un límite de cubierta de $1,717,171.00 para el Edificio 4.

25. En cuanto al referido Edificio número cuatro (4), la Póliza establece un deducible del 2% del límite de cubierta por tormentas ("windstorm"), lo que equivale a $34,343.00.

26. El Appraisal Award dispone que el valor tasado de los daños ocasionados por el huracán María al Edificio número cuatro (4) fue de $482,221.07.

27. La Póliza asegura el Edificio número cinco (5) de Jardines de Cuenca el cual consiste en "four story concrete building occupied as residential apartments".

28. La Póliza incluye un límite de cubierta de $1,717,171.00 para el Edificio número cinco (5).

29. En cuanto al referido Edificio número cinco (5), la Póliza establece un deducible del 2% del límite de cubierta por tormentas ("windstorm"), lo que equivale a $34,343.00.

30. La Póliza asegura el Edificio número seis (6) de Jardines de Cuenca el cual consiste en "four story concrete building occupied as residential apartments".

31. La Póliza incluye un límite de cubierta de $2,350,905.00 para el Edificio número seis (6).

32. En cuanto al referido Edificio número seis (6), la Póliza establece un deducible del 2% del límite de cubierta por tormentas ("windstorm"), lo que equivale a $47,018.00.

33. La Póliza asegura el Edificio número siete (7) de Jardines de Cuenca el cual consiste en "four story concrete building occupied as residential apartments".

34. La Póliza incluye un límite de cubierta de $2,564,624.00 para el Edificio número siete (7).

35. En cuanto al referido Edificio número siete (7), la Póliza establece un deducible del 2% del límite de cubierta por tormentas ("windstorm"), lo que equivale a $51,292.00.

36. La Póliza asegura el Edificio número ocho (8) de Jardines de Cuenca el cual consiste en "four story concrete building occupied as residential apartments".

37. La Póliza incluye un límite de cubierta de $2,341,805.00 para el Edificio número ocho (8).

38. En cuanto al referido Edificio número ocho (8), la Póliza establece un deducible del 2% del límite de cubierta por tormentas ("windstorm"), lo que equivale a $46,836.00.

39. La Póliza asegura el Edificio número nueve (9) de Jardines de Cuenca el cual incluye lo siguiente: Multiuse Building-Club House, Vehicular Entrance ARC e Illumination Poles.

40. La Póliza incluye un límite de cubierta de $82,681.00 para el Edificio número nueve (9).

41. El límite de cubierta del Edificio número nueve (9) se subdivide de la siguiente manera: "Multi use Bldg - Club House $41,881.00 / Vehicular Entrance ARC $11,900.00 / Illumination Poles $28,900.00".

42. En cuanto al referido Edificio número nueve (9), la Póliza establece un deducible del 2% del límite de cubierta por tormentas ("windstorm"), lo que equivale a $1,654.00.

43. El deducible de $1,654.00 aplicable al Edificio número nueve (9) se subdivide de la siguiente manera: $838.00 de deducible para el Multiuse Building-Club House (41,881 x 0.02 = 837.62); $238.00 para el Vehicular Entrance ARC (11,900 x 0.02 = 238), y $578.00 para los Illumination Poles (28,900 x 0.02 = 578).

44. En cuanto a las áreas aseguradas del Edificio número nueve (9), el Club House y el Vehicular Entrance, el Appraisal Award no le asigna una partida de daños.

45. La Póliza asegura el Edificio número diez (10) de Jardines de Cuenca el cual incluye lo siguiente: Waste Storage Area, Playground y Vehicular Gates & Motors.

46. La Póliza incluye un límite de cubierta de $16,762.00 para el Edificio número diez (10).

47. El límite de cubierta del Edificio número diez (10) se subdivide de la siguiente manera: "Waste Storage Area $5,312 / Playground $6,200 / Vehicular Gates & Motors $5,250".

48. En cuanto al referido Edificio número diez (10), la Póliza establece un deducible del 2% del límite de cubierta por tormentas ("windstorm"), lo que equivale a $335.00.

49. El deducible de $335.00 aplicable al Edificio número diez (10) se subdivide de la siguiente manera: $106.00

de deducible para el Waste Storage Area (5,312 x 0.02 = 106.24); $124.00 para el Playground (6,200 x 0.02 = 124), y $105.00 para los Vehicular Gates & Motors (5,250 x 0.02 = 105).

50. En cuanto a las áreas aseguradas del Edificio número diez (10), el Waste Storage Area y los Vehicular Gate/Motors, el Appraisal Award no le asigna una partida de daños.

51. La Póliza asegura el Edificio número once (11) de Jardines de Cuenca el cual incluye lo siguiente: Fences, Electrical Transformers y Exterior Benches.

52. La Póliza incluye un límite de cubierta de $92,600.00 para el Edificio número once (11).

53. El límite de cubierta del Edificio número once (11) se subdivide de la siguiente manera: "Fences $14,400.00 / Electrical Transformers $77,000.00 / Exterior Benches $1,200.00".

54. En cuanto al referido Edificio número once (11), la Póliza establece un deducible del 2% del límite de cubierta por tormentas ("windstorm"), lo que equivale a $1,852.00.

55. El deducible de $1,852.00 aplicable al Edificio número once (11) se subdivide de la siguiente manera: $288.00 de deducible para las Fences (14,400 x 0.02 = 288); $1,540.00 para los Electrical Transformers (77,000 x 0.02 = 1,540), y $24.00 para los Exterior Benches (1,200 x 0.02 = 24).

56. En cuanto al área asegurada del Edificio número once (11), los Electrical Transformers, el Appraisal Award no le asigna una partida de daños.

57. La Póliza asegura el Edificio número doce (12) de Jardines de Cuenca el cual incluye lo siguiente: Air Conditioning, Canvas Canopies y Exterior Illumination.

58. La Póliza incluye un límite de cubierta de $6,360.00 para el Edificio número doce (12).

59. El límite de cubierta del Edificio número doce (12) se subdivide de la siguiente manera: "Air Conditioning $900 / Canvas Canopies $960 / Exterior Illumination $4,500".

60. En cuanto al referido Edificio número doce (12), la Póliza establece un deducible del 2% del límite de cubierta por tormentas ("windstorm"), lo que equivale a $127.00.

61. El deducible de $127.00 aplicable al Edificio número doce (12) se subdivide de la siguiente manera: $18.00 de deducible para el Air Conditioning (900 x 0.02 = 18); $19.00 para los Canvas Canopies (960 x 0.02 = 19.20), y $90.00 para el Exterior Illumination (4,500 x 0.02 = 90).

62. En cuanto al Air Conditioning que forma parte del Edificio número doce (12), el Appraisal Award no le asigna una partida de daños.

63. La Póliza asegura el Edificio número trece (13) de Jardines de Cuenca el cual incluye lo siguiente: Mailbox Station, Open Areas, Underground Utilities y Awnings.

64. La Póliza incluye un límite de cubierta de $262,660.00 para el Edificio número trece (13).

65. El límite de cubierta del Edificio número trece (13) se subdivide de la siguiente manera: "Mailbox Station $10,660.00 / Open Areas $87,000.00 / Underground Utilities $90,000.00 / Awnings $75,000.00".

66. En cuanto al referido Edificio número trece (13), la Póliza establece un deducible del 2% del límite de cubierta por tormentas ("windstorm"), lo que equivale a $5,253.00.

67. El deducible de $5,253.00 aplicable al Edificio número trece (13) se subdivide de la siguiente manera: $213.00 de deducible para el Mailbox Station (10,660 x 0.02 = 213.20); $1,740.00 para las Open Areas (87,000 x 0.02 = 1,740); $1,800.00 para las Underground Utilities (90,000 x 0.02 = 1,800), y $1,500.00 para los Awnings (75,000 x 0.02 = 1,500).

68. En cuanto a las áreas aseguradas del Edificio número trece (13), entiéndase, al Mailbox Station, las Open Areas y los Underground Utilities, el Appraisal Award no le asigna una partida de daños.

69. Además, la Póliza provee cubierta para lo siguiente: Debris Removal; Equipment Breakdown; Flood Coverage Endorsement; Miscellaneous Coverage (Claim Preparation Expenses); Ordinance or Law Coverage; Outdoor Trees, Shrubs and Plants, y Pollutant Clean Up and Removal.

70. La Póliza incluye un límite de cubierta de $250,000.00 para el Debris Removal.

71. En cuanto a los Debris Removal, la Póliza establece un deducible del 2% del límite de cubierta por vientos ("wind"), lo que equivale a $5,000.00 (250,000 x 0.02 = 5,000).

72. El Appraisal Award dispone que el valor de los daños ocasionados por el huracán María por los Debris Removal fue de $5,989.78.71

73. El valor de los daños ocasionados por el huracán María por los Debris Removal según dispuesto en el Appraisal Award ($5,989.78), no excede el límite de cubierta dispuesto en la Póliza para los Debris Removal ($250,000.00).

74. Al descontar el deducible aplicable a los Debris Removal a la valorización de daños establecida en el Appraisal Award ($5,989.78 - $5,000.00 = $989.78), One Alliance viene obligada a pagarle a Jardines de Cuenca bajo la Póliza la suma de $989.78 por los daños sufridos por los Debris Removal, que son parte de las partidas misceláneas, como consecuencia del paso de huracán María.

75. La Póliza incluye un límite de cubierta de $19,311,688.00 para Equipment Breakdown.

76. En cuanto al Equipment Breakdown, la Póliza establece un deducible de $2,500.00.

77. El Appraisal Award no le asigna una partida de daños a los Equipment Breakdown.

78. La Póliza incluye un límite de cubierta de $19,311,688.00 para Flood Coverage Endorsement.

79. En cuanto al Flood Coverage Endorsement, la Póliza establece un deducible de $5,000.00.

80. El Appraisal Award no le asigna una partida de daños a los Flood Coverage Endorsement. Véase, Anejo B, Appraisal Award Form; SUMAC Entrada Núm.

81. La Póliza incluye un límite de cubierta de $2,500.00 para los Miscellaneous Coverage, es decir, para los Claim Preparation Expenses.

82. En cuanto a los Miscellaneous Coverage, entiéndase, los Claim Preparation Expenses, la Póliza no establece ningún deducible.

83. La Póliza incluye un límite de cubierta de $2,000,000.00 para Ordinance or Law Coverage.

84. En cuanto al Ordinance or Law Coverage, la Póliza establece un deducible del 2% del límite de cubierta por vientos ("wind"), lo que equivale a $40,000.00 (2,000,000.00 x 0.02 = 40,000).

85. El Appraisal Award no le asigna una partida de daños para los Ordinance or Law Coverage.

86. La Póliza incluye un límite de cubierta de $15,000.00 para los Outdoor Trees, Shrubs and Plants.

87. En cuanto a los Outdoor Trees, Shrubs and Plants, la Póliza establece un deducible del 2% del límite de cubierta por vientos ("wind"), lo que equivale a $300.00 (15,000 x 0.02 = 300).

88. La Póliza incluye un límite de cubierta de $15,000.00 para Pollutant Clean Up and Removal.

89. En cuanto a Pollutant Clean Up and Removal, la Póliza establece un deducible de $1,000.00.87 90. El Appraisal Award no le asigna una partida de daños para Pollutant Clean Up and Removal.[11] (Notas omitidas)

Por otro lado, el foro primario enumeró los siguientes hechos que estaban en controversia:

1. Si hubo espoliación de prueba.

2. Si hubo ocultación de un Informe Pericial de daños con fecha de 2018, por el asegurado, y si eso provoca la nulidad de la póliza.

3. Si se altera la valorización y ajuste de los daños reclamados por razón del Informe Pericial de daños alegadamente ocultado con fecha de 2018.

4. Si se violaron las cláusulas y condiciones de la póliza de seguro sobre la propiedad, por razón del Informe Pericial de daños alegadamente ocultado con fecha de 2018.

5. La validez de la póliza.[12]

A base de lo previamente citado, el foro *a quo* concluyó que no había controversia en cuanto a que se llevó a cabo un

---

[11] *Íd.*, págs. 585-593.
[12] *Íd.*, pág. 593.

*Appraisal Award* que estableció el valor total de los daños en $4,865,729.40 y que la Recurrida intentó impugnar dicha cantidad pero dicha acción fue infructuosa. Ahora bien, el foro primario también determinó que existían dudas en cuanto a si el informe pericial que se hizo cercano a la fecha del paso del Huracán María fue ocultado y si ello influía en la validez de la póliza y alteraba el proceso de valorización. Por tal motivo razonó que no era propicio resolver este caso por la vía sumaria, por lo cual declaró *No Ha Lugar* dicha moción presentada por los Peticionarios.

Inconforme con este resultado, el 28 de junio de 2024, los Peticionarios comparecieron ante esta Curia mediante una *Petición de Certiorari* y formularon los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al no ordenar el pago de ciertas cuantías que determinó que estaban incontrovertidas y que OAIC viene obligada a pagar a Jardines de Cuenca bajo la Póliza.
>
> Erró el Tribunal de Primera Instancia al determinar que existe controversia de hechos materiales sobre defensas renunciadas.
>
> Erró el Tribunal de Primera Instancia al concluir que existe controversia sobre la valoración de los daños y si ésta se ajusta a los daños reclamados después de haber denegado la impugnación al appraisal award y de determinar como hecho incontrovertido la emisión del appraisal award y su cuantía.
>
> Erró el Tribunal de Primera Instancia al no dictar sentencia sumaria ordenando el pago de los daños cubiertos bajo la Póliza, pese a que OAIC no estableció excepción alguna de cubierta aplicable, ni cumplió con la Regla 36.3 de Procedimiento Civil.

El 2 de julio de 2024, esta Curia emitió una *Resolución* en la que, entre otras cosas, se le concedió un término de diez (10) días a la Recurrida para que mostrara causa por la cual no debíamos expedir el auto de *certiorari* y revocar la determinación recurrida. Oportunamente, el 18 de julio de 2024, la Recurrida compareció mediante *Oposición a Petición de Certiorari*.

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

## II.
### A. Certiorari

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni sin parámetros. *Mun. de Caguas*

*v. JRO Construction*, 201 DPR 703, 712 (2019). La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR __ (2023), 2023 TSPR 145, resuelto el 19 de diciembre de 2023. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra*, págs. 712-713. No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Birriel Colón v. Econo y otro,* 213 DPR ___ (2023), 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964, 979 (2022). La Regla

36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.* No obstante, para que una sentencia sumaria proceda, es necesario que de los documentos que la acompañan, se demuestre que no existe una controversia real sobre los hechos y solo reste aplicar el derecho. *Birriel Colón v. Supermercado Los Colobos e Integral Assurance Company, supra; SLG Szendrey v. Consejo de Titulares,* 184 DPR 133, 138 (2011); *Ramos Pérez v. Univisión de Puerto Rico, Inc.,* 178 DPR 200, 214 (2010).

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. v. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo estableció "el estándar específico" que debe utilizar este Foro al "revisar denegatorias o concesiones de Mociones de Sentencia Sumaria". A esos efectos, el Tribunal dispuso que:

> el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si

el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018), citando a *Meléndez González et al. v. M. Cuebas, supra,* págs. 118-119.

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas, supra.* "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Supermercado Los Colobos e Integral Assurance Company, supra,* citando a *Meléndez González et al. v. M. Cuebas, supra.*

### III.

En el presente recurso, los Peticionarios solicitan nuestra intervención discrecional por vía del recurso de autos, a los efectos de que revoquemos la *Resolución* emitida por el foro primario, en la que, en el ejercicio de su discreción, determinó que existían controversias reales y materiales que impedían resolver la controversia por la vía sumaria. Aun cuando la Regla 52.1 de Procedimiento Civil, *supra,* nos faculta a revisar las denegatorias de mociones de carácter dispositivo, como lo es la sentencia sumaria, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Los Peticionarios no han demostrado que el foro primario abusó de su discreción o que medió error, pasión, prejuicio o parcialidad al emitir la determinación impugnada.

Además, l*os Peticionarios* tampoco lograron demostrar que el foro *a quo* se equivocó en la interpretación del derecho, que justifique nuestra intervención. Por virtud de lo anterior, procede denegar el recurso de epígrafe.

**IV.**

Por los fundamentos expuestos, **denegamos** la expedición del auto de *certiorari.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones